IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT L. WENZEL,** | ) | |
| Plaintiff | ) | C.A.No. 1:20-cv-291 |
| | ) | |
| vs. | ) | |
| | ) | Re: Motion for Summary Judgment |
| **JENNIFER BOVEE, et al,** | ) | ECF No. 25 |
| Defendants. | ) | |

**MEMORANDUM OPINION**

District Judge Susan Paradise Baxter

This is a civil rights action filed pursuant to 28 U.S.C. § 1983. Plaintiff Robert Wenzel is suing Corporal Jennifer Bovee, and Troopers Barnhill, Carcaterro, White, and Knepp of the Pennsylvania State Police. Mr. Wenzel's legal claims arise out of his arrest by Defendants. Mr. Wenzel raises three federal claims of excessive force, failure to intervene, and supervisory liability, as well as state law claims of assault and battery and intentional infliction of emotional distress. The state law claims are pled alternatively to the excessive force claim.

**I.     Relevant Procedural History**

Following a period of discovery, Defendants moved for partial summary judgment on the failure to intervene, supervisory liability, assault and battery, and intentional infliction of emotional distress claims. ECF No. 25. Mr. Wenzel opposes the motion in all regards. ECF Nos. 32-34. Defendants filed a brief in reply to the opposition. ECF No. 35. The motion is fully briefed and is ripe for disposition. The motion will be granted in part and denied in part.

1

**II.     Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of W. Chester, Pa*., 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. When considering a motion for summary judgment, the court cannot weigh the evidence or to make credibility determinations but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

### III. The Undisputed Material Facts

The following factual background is set forth pursuant to the standards detailed above. As required by Local Rule and by the undersigned's Practices and Procedures, the parties have filed Concise Statements of Material Facts and oppositions thereto. The facts herein are taken directly from the admitted facts unless otherwise noted.

#### A. Prior to the Arrest

On October 4, 2018, Mr. Wenzel was sitting with a companion at the bar at the Shaw House in Sheffield, Pennsylvania. A bartender, who recognized Mr. Wenzel and knew there was a warrant for his arrest[1], telephoned the Pennsylvania State Police to inform them of his whereabouts. ECF No. 27, ¶ 9.

Following the tip from the bartender, Corporal Bovee made the decision to take the four Defendant Troopers to the Shaw House Bar to arrest Mr. Wenzel. While still at the Pennsylvania State Police Barracks, Corporal Bovee and the Defendant Troopers made a plan for entering the bar and approaching Mr. Wenzel. ECF No. 27, ¶ 13. Corporal Bovee informed the other Defendants that Mr. Wenzel had a history of fighting with law enforcement and to expect a fight from him. ECF No. 33, ¶ ¶ 72-73.

A few months prior to this arrest, Mr. Wenzel sustained multiple fractured vertebrae in a single vehicle car accident. ECF No. 27, ¶ ¶ 60-63. Corporal Bovee made no allowance for Wenzel's recent injuries in the plan to take him into custody. ECF No. 33, ¶ ¶ 72-73.

#### B. The Arrest

There is a video recording (without accompanying audio) of what happened inside the bar. The camera appears to be stationary above the bar pointed directly at a section of the bar.

---

[1] The arrest warrant was for a parole violation on an underlying DUI charge. ECF No. 33, ¶ 78.

3

Initially, Troopers White and Barnhill approached Mr. Wenzel who was seated at the bar with his companion. ECF No. 27, ¶ 25. Mr. Wenzel spins slightly on his stool, looking over his right shoulder to acknowledge the Troopers.[2]

Mr. Wenzel then stands up from his barstool and is directed by Troopers White, Barnhill, and Carcaterro to a nearby doorframe. ECF No. 27, ¶ 29. These three Troopers then begin attempting to put Mr. Wenzel's hands behind his back, Trooper Barnhill with his left hand, Trooper Carcaterro with his right hand, and Trooper White assisting both. *Id.* at ¶ 30.

The officers had difficulty handcuffing Mr. Wenzel.[3] Mr. Wenzel's companion who was in close proximity to the group became agitated. Troopers Barnhill, White, and Carcaterro then worked to turn Mr. Wenzel, who was partially handcuffed, away from the door frame and began walking him toward the front door of the bar. ECF No. 33, ¶ 85. As the group reached the area in between the bar and the pool table, Corporal Bovee and Trooper Knepp (who had both been securing the back door of the bar) approached the group from behind. *Id.* at ¶ 86.

During the move from the doorway toward the front door, Trooper White said something to the effect of "take him to the ground." ECF No. 27, at ¶ 42. Trooper White decided that Mr. Wenzel needed to be taken to the ground to gain control of and place handcuffs on him. *Id.* at ¶ 43. Nearly simultaneous with his direction to take Mr. Wenzel to the ground, Trooper White used his right foot to swipe Mr. Wenzel's left foot out from under him. *Id.* at ¶ 44. As a result, Troopers White, Carcaterro, Barnhill, and Knepp fell to the ground on top of Mr. Wenzel. *Id.* at ¶ 45.

---

[2] The parties disagree as to whether Mr. Wenzel spun on the barstool or whether he was turned by Trooper White. This factual dispute is immaterial to the Court's analysis.

[3] The parties disagree as to whether Mr. Wenzel was struggling against the Trooper's efforts to handcuff him. *Id.* at ¶ ¶ 32-33.

4

While still on the floor, the Troopers finished placing handcuffs on Mr. Wenzel and removed him from the bar through the front door. *Id*. at ¶ 51. The entire encounter is videotaped and the parties agree that the incident lasts thirty-seven (37) seconds[4]. *Id*. at ¶ 55.

### C. The Aftermath of the Arrest

There was blood immediately visible on the floor in the bar. *Id*. at ¶ 53. Mr. Wenzel was taken by ambulance to UPMC Hamot and was accompanied by Bovee and Barnhill. *Id*. at ¶ 57. During the ride, Corporal Bovee informed Wenzel that she was friends with his daughter and had heard from her that he had broken his neck in a car accident in the summer of 2018. *Id*. at ¶ 58.

As a result of his fall to the floor during the arrest, Mr. Wenzel sustained a laceration to his forehead requiring 4-5 stiches. *Id*. at ¶ 64. Mr. Wenzel has a fracture to his vertebrae at C5 – Plaintiff contends this is a new fracture as a result of the force used during this arrest and Defendants contend that this is a re-fracture from a prior accident. ECF No. 27, at ¶ 65; ECF No. 33, at ¶ 65.

Wenzel was charged with Resisting Arrest and was found guilty after a trial by jury. ECF No. 27, at ¶ ¶ 66-67. The Internal Affairs Division of the Pennsylvania State Police conducted an investigation into this matter and determined that the Troopers were justified in their use of force such that no discipline was warranted. *Id*. at ¶ 68.

### IV. Analysis and Discussion

Defendants have not moved for summary judgment as to the excessive force claim against Troopers White and Carcaterro at Count I of the Complaint.

---

[4] In the video, beginning at 0.10 the officers approach Mr. Wenzel and at 0.34 Mr. Wenzel is taken to the floor. From the time of the first touch to the time that Mr. Wenzel was on the floor is twenty-four (24) seconds.

5

### A. The Duty to Intervene Claim

At Count II of the Complaint, Mr. Wenzel alleges that Defendants Bovee, Barnhill, and Knepp had a duty to intervene to protect him from the excessive force applied by Defendants White and Carcaterro. ECF No. 1, ¶ ¶ 78-86. According to the Complaint, Bovee and Barnhill knew or should have known that Wenzel's compromised medical condition (stemming from a car accident and from falling from a tree) put him at a special risk of harm and that they failed to relate this information to Knepp, White, and Carcaterro. Instead, Corporal Bovee advised the others that Mr. Wenzel was dangerous and that they should anticipate a fight, thereby "creating a situation in which the use of excessive force against an already injured individual was significantly increased." *Id*. at ¶ 84. Furthermore, Corporal Bovee and Troopers Barnhill and Knepp were in a position to "immediately and effectively intervene in the situation in time to prevent the excessive use of force against Plaintiff." *Id*. at ¶ 85.

An officer may be directly liable for failing to intervene "when a constitutional violation such as an unprovoked beating takes place in his presence." *Kenney v. City of Pittsburgh*, 2014 WL 789082, at *4 (W.D. Pa. 2014) *citing Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002) and *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, but only if there is a realistic and reasonable opportunity to intervene. "To be directly liable under a failure to intervene theory, (1) the plaintiff must have demonstrated that her underlying constitutional rights were violated; ... (2) the officer had a duty to intervene; and (3) the officer must have had a realistic and reasonable opportunity to intervene." *McIntosh v. Wetzel*, 2022 WL 3293490, at *8 (W.D. Pa. Aug. 11, 2022) *quoting Klein v. Madison*, 374 F. Supp. 3d 389, 419 (E.D. Pa. 2019). A plaintiff bears the burden to prove that a constitutional violation occurred and that the non-

6

intervening officer had a realistic and reasonable opportunity to intervene. *Kenny*, 2014 WL 789082, at *4.

In this analysis, the threshold issue is whether excessive force was in fact used. *Morrieson v. City of Jersey City*, 2022 WL 819634, at *9 (D.N.J. Mar. 18, 2022). First, there must be excessive force, "then an officer must have a 'realistic and reasonable opportunity to intervene' before the officer can be liable for failing to intervene." *Id. quoting Smith v. Mensinger*, 293 F.3d at 650-51. For purposes of their motion, Defendants assume arguendo[5] that the force used was excessive and argue that the alleged failures by Bovee, Barnhill, and Knepp do not factually support a viable § 1983 claim.

The inquiry as to whether an officer had a realistic and reasonable opportunity to intervene is fact-specific and "courts consider many factors, including the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, and the ability of the non-intervening officer to perceive and/or hear the alleged assault." *Arbruster v. Marguccio*, 2006 WL 3488969, at *8 (W.D. Pa. 2006). Although the failure to intervene claim is raised against all three Defendants, the actions or inactions and physical proximity of each Defendant differ and will be examined separately in the face of the motion for summary judgment. *See generally, Velardo v. Lewko*, 2019 WL 5095657 (M.D. Pa. Aug. 22, 2019).

*Corporal Bovee*

The parameters of the failure to intervene claim against Corporal Bovee are slightly different than those against her co-Defendants. Mr. Wenzel contends that Corporal Bovee set the stage for a violent encounter between the Troopers and Mr. Wenzel by telling her subordinates to

---

[5] Defendants do not concede that the amount of force used was excessive.

7

expect a fight and by failing to tell them of his recent injuries. Plaintiff alleges that Corporal Bovee knew that Mr. Wenzel's physical condition put him at special risk of harm and failed to so advise the other troopers prior to the arrest. Furthermore, she advised the other troopers that Mr. Wenzel was dangerous and that they should anticipate a fight, thereby "creating a situation in which the use of force … was significantly increased." ECF No. 1, ¶ 84. Finally, Corporal Bovee, like Troopers Barnhill and Knepp, was in a position to prevent the excessive use of force at the time of the arrest when Trooper White took Mr. Wenzel to the floor.

Even assuming that Corporal Bovee's actions prior to arriving at the Shaw House Bar created a situation in which the use of force was significantly increased, these actions cannot form the basis of the failure to intervene claim as a matter of law. A failure to intervene claim is based on the contemporaneous use of force and the reasonable opportunity to intervene. *See Meza v. Jackson Twp.*, 2021 WL 2549319, at *10 (D.N.J. 2021 ("The inquiry is whether the officer was in a position to see the violation and had a reasonable amount of time to intervene."). Here, her actions before the actual use of the force, even if proven at trial, do not factually support her direct liability in a failure to intervene claim.

As to Corporal Bovee's actions at the scene of the arrest, the video evidence at the Shaw House Bar is dark and grainy, but it is clear that Corporal Bovee[6] had no physical contact with Mr. Wenzel. From the time she enters the frame (at 0.28) to the time that Mr. Wenzel's feet are swept out from under him (at 0.34) is six (6) seconds. ECF No. 29, Exhibit E. Moreover, it is

---

[6] Corporal Bovee is easily identifiable in the video as she is the only person wearing a jacket bearing reflective lettering on the back. ECF No. 29-1, page 61.

8

undisputed that Trooper White's declaration that Mr. Wenzel should be taken to the ground and the tripping of Wenzel were "almost simultaneous."[7] ECF No. 27, at ¶ 44.

While "brevity may not always require dismissal," *Morales v. Maxwell*, 2022 WL 1224973, at * 16 (D.N.J. Apr. 26, 2022), "the duration of the incident is key to determining whether there was a reasonable opportunity [to intervene]." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. Sept. 16, 2020). Here, the video evidence demonstrates that the duration of the event was very short and Corporal Bovee was the officer furthest from Mr. Wenzel. In opposition, Plaintiff has not pointed to any evidence from which a jury could conclude that Corporal Bovee had a realistic and reasonable opportunity to intervene. Accordingly, judgment will be granted in Corporal Bovee's favor as to this claim.

*Trooper Barnhill*

Like the allegations against Corporal Bovee, Trooper Barnhill is charged with knowledge of Mr. Wenzel's medical condition and failing to impart that knowledge to the other troopers prior to the arrest. Like those allegations against Corporal Bovee, even if proven, they are not sufficient to impose direct liability on Trooper Barnhill for failure to intervene.

Factually, Trooper Barnhill's involvement in the arrest and his physical proximity to Mr. Wenzel are considerable. The video evidence reveals that Trooper Barnhill, dressed in plain clothes, was one of the officers, along with White and Carcaterro, who had direct physical contact with Mr. Wenzel both before and after Trooper White swept Mr. Wenzel's legs out from under him. Trooper Barnhill held Mr. Wenzel's left arm and hand behind his back and assisted Troopers White and Carcaterro with placing the handcuffs on him. Trooper Barnhill was a part

---

[7] Because the video lacks accompanying audio, it is impossible to determine the precise moment at which Trooper White communicates that Mr. Wenzel should be taken to the floor.

9

of the group of three officers who moved Wenzel from the doorway toward the front door of the bar and was one of the four officers who landed on the floor with Mr. Wenzel. ECF No. 29, Exhibit E.

Here, the duration of the event is key to the disposition of this claim against Trooper Barnhill. According to Trooper Barnhill, there was no delay between Trooper White's directive to take Wenzel to the ground and all of them hitting the floor. In his deposition, Trooper Barnhill says "immediately after" Trooper's White's command, Mr. Wenzel was on the ground. ECF No. 29-2, page 177. This testimony is consistent with the video evidence in that the entire event from start to finish lasts a few seconds. *Torres v. Allentown Police Dep't*, 2014 WL 4081477, at * 7 (E.D. Pa. Aug. 18, 2014) *quoting Bryant v. City of Phila.*, 890 F.Supp.2d 591, 601 (E.D. Pa. 2012) ("Courts have held that such a [realistic and reasonable] opportunity exists only when excessive force is used in the officer's presence […] or if the officer saw his colleague use excessive force or had time to reach him."). Plaintiff points to no evidence from which a jury could conclude that Trooper Barnhill had a reasonable opportunity to intervene and so judgment will be entered in his favor.

*Trooper Knepp*

The evidence reveals that Trooper Knepp's involvement and physical proximity to the use of force were similar to that of Trooper Barnhill. Like Barnhill, Trooper Knepp was one of the four officers who ended up on the floor with Mr. Wenzel. However, Trooper Knepp only approached the group after the move from the internal doorway toward the front of the bar had begun. ECF No. 29, Exhibit E. So then, based on the record evidence, Trooper Knepp's involvement is more than Corporal Bovee's but less than Trooper Barnhill's. Trooper Knepp was

10

physically close to Mr. Wenzel for approximately three (3) seconds. Trooper Knepp enters the video frame at 0.31 as the group is moving and catches them at almost the exact time they all fall to the floor (at 0.34). *Id*.

The evidence reveals Trooper Knepp's short involvement and lack of physical proximity in the abbreviated incident. *See El*, 975 F.3d at 336 ("[T]he question is not whether she had an opportunity to intervene in the 'entire incident,' but in [the officer's] use of force, which lasted about five seconds."). Mr. Wenzel points to no evidence from which a jury could conclude that Trooper Knepp had a reasonable opportunity to intervene. Summary judgment will be entered in his favor.[8]

### B. The Supervisory Liability Claim

At Count III of the Complaint, Mr. Wenzel's claim against Corporal Bovee is based on her supervisory role of the other Troopers.

It is well settled that liability under § 1983 requires one's personal involvement in the deprivation of a constitutional right. *See Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). However, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) *citing Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

---

[8] Because the failure to intervene claim is the only claim against Troopers Barnhill and Knepp, and because summary judgment is being granted in their favor, they will be terminated on the docket.

11

The Third Circuit's model jury instructions are enlightening here:

> "[T]he first way for plaintiff to show that the supervisor is liable for her subordinate's conduct is to show that the supervisor directed the subordinate to engage in the conduct. Plaintiff need not show that the supervisor directly, with his or her own hands, deprived plaintiff of his rights. The law recognizes that a supervisor can act through others, setting in motion a series of acts by subordinates that the supervisor knows, or reasonably should know, would cause the subordinates to violate the plaintiff's rights. Thus, plaintiff can show that the supervisor caused the conduct if plaintiff shows that the subordinate violated plaintiff's rights at the supervisor's direction."

Model Jury Instructions, § 4.6.1.[9]

In support of their motion for summary judgment, Defendants argue that there is no evidence in the record to support a claim of supervisory liability against Bovee. They are mistaken. There is evidence before this Court that Corporal Bovee was the officer in charge[10], she made the decision to arrest Wenzel at the bar[11] and made a plan to take him into custody[12], and that she told the other Trooper Defendants that Wenzel was a "known fighter, known to be an issue with police and that he's a big guy."[13] Moreover, Corporal Bovee instructed that all available troopers were going to the arrest[14] meaning that five troopers went to the bar to arrest Mr. Wenzel on a parole violation. And, she told them that they should "be ready because of the stories" they had heard from older troopers.[15]

---

[9] *See* www.ca3.uscourts.gov/model-jury-instructions.

[10] ECF No. 29-1, page 27 (deposition of Corporal Bovee).

[11] ECF No. 29-1, page 25.

[12] *Id*. at page 26.

[13] *Id*. at pages 28-29.

[14] ECF No. 29-8, page 26.

[15] *Id*.

Here, based on the evidence of record, a reasonable factfinder could conclude that Corporal Bovee set in motion a series of acts by the Troopers that she knew or should have known would cause the Troopers to violate Mr. Wenzel's rights. *See Jones v. Wenerowics*, 2022 WL 3580762, at * 4 (M.D. Pa. Aug. 19, 2022) q*uoting Anderson*, 477 U.S. at 252 ("if the defendant … moves for summary judgment … based on a lack of proof of a material fact, the judge must ask [herself] not whether [she] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."). Because a jury could return a verdict in favor of Mr. Wenzel on his claim of supervisory liability against Corporal Bovee, the motion for summary judgment will be denied on this claim.

### C. The State Law Claims

Mr. Wenzel alleges that the actions of Defendants Carcaterro and White at the time of arrest constitute assault and battery, as well as the intentional infliction of emotional distress under state law. ECF No. 1, Count IV. These claims are pled in the alternative to the excessive force claim against Carcaterro and White.

Rather than argue these claims on their merits, Defendants seek judgment in their favor based on sovereign immunity. It is well established that Commonwealth employees acting within the scope of their employment are generally immune from suit except in situations where immunity has been explicitly waived. Under Pennsylvania's sovereign immunity statute[16], "an

---

[16] The Pennsylvania General Assembly has carved out certain limited exceptions from its grant of sovereign immunity to Commonwealth actors, none of which apply here. Section 8522(b) of Title 42 provides nine narrow categories where the state has waived its sovereign immunity for claims involving (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store

13

employee of the Commonwealth … acting within the scope of his or her employment or duties, is protected by sovereign immunity from the imposition of liability for intentional tort claims." *Mitchell v. Luckenbill*, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010) *quoting Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1139 (Pa.Cmmwlth.Ct. 1997). "Even willful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress." *Spiker v. Allegheny County Bd. of Probation & Parole*, 920 F.Supp.2d 580, 611 (W.D. Pa. 2013) *quoting Mitchell*, 680 F.Supp.2d at 682.

Under Pennsylvania law, "an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer." *Kircher v. Pennsylvania State Police Dep't*, 2016 WL 4379143, at *26 (M.D. Pa. 2016) *quoting Mitchell*, 680 F.Supp.2d at 682. Although the scope of employment determination is usually reserved for the factfinder, "where the appropriate resolution of that issue is readily apparent from the evidence, disposition on the grounds of immunity should not be delayed." *Id*. at *28. After all, "the motivating force behind grants of immunity to government entities and their employees is to free them from litigating over actions taken and decisions made to carry out effective governance." *Id*.

---

sales; (8) National Guard activities; and (9) toxoids and vaccines. "Each of these exceptions is to be strictly construed." *Urella v. The Pennsylvania State Troopers Ass'n*, 628 F.Supp.2d 600, 606 (E.D. Pa. 2008). None of these exceptions apply here.

In accordance with the foregoing, Defendants White and Carcaterro are entitled to sovereign immunity as to Plaintiff's state law claims because there is no genuine dispute of material fact that they acted within the scope of their employment during Mr. Wenzel's arrest. Troopers White and Carcaterro were on duty and in uniform on the night of the arrest. They acted at the direction of Corporal Bovee to effectuate the arrest of Mr. Wenzel on a warrant for a parole violation. "A certain amount of physical force" may attend any arrest – "that is the nature of the job." *Kircher*, 2016 WL 4379143, at *28. The use of force to effect a lawful arrest does not strip the officers of the immunity that they enjoy as agents of the Commonwealth when performing the work of the Commonwealth. Because their actions fall within the scope of their employment and because Pennsylvania has not waived sovereign immunity for the commission of intentional torts undertaken within the scope of employment, sovereign immunity acts as a bar to Mr. Wenzel's state law claims. Summary judgment will be entered in favor of Troopers White and Carcaterro and against Mr. Wenzel on Count IV.

**V.     Conclusion**

Summary judgment will be granted as to the failure to intervene claim, denied as to the supervisory liability claim, and granted as to the state law claims. Because the failure to intervene claim is the only claim levied against Troopers Barnhill and Knepp and because summary judgment is being granted in their favor, the Clerk will be directed to terminate them on the docket.

The claims remaining are the excessive force claim against Troopers White and Carcaterro at Count I and the supervisory claim against Corporal Bovee at Count III.

An appropriate order follows.